```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
EDWARD SAMS,                            :
                        Petitioner,     :
                                        :      07 Civ. 4600 (DLC)
           -v-                          :
                                        :      OPINION and ORDER
JOHN J. DONELLI, Superintendent of Bare :
Hill Correctional Facility,             :
                        Respondent.     :
                                        :
----------------------------------------X
```

Appearances:

Petitioner Edward Sams, pro se
1385 Stebbin Avenue, Room 205
Bronx, NY 10459

For Respondent John J. Donelli:
Ashlyn Hope Dannelly
New York State Office of the Attorney General
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

 Petitioner, Edward Sams ("Sams"), proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 that was received by the Pro Se Office in this District on April 26, 2007.  Pursuant to an Order dated June 11, 2007, the petition was referred to the Honorable Ronald E. Ellis. Respondent filed a motion to dismiss the petition on October 17, 2007.  Sams did not file opposition to the motion, and no further submissions have been made.  On July 8, 2008, the Order referring the petition to Judge Ellis was withdrawn.  For the

following reasons, the respondent's motion is denied without prejudice.

BACKGROUND

On December 23, 1999, a New York County grand jury returned an indictment charging Sams with robbery in the first degree in connection with the December 7, 1999 robbery of a grocery store on West 129th Street in Manhattan. Following plea negotiations, on May 23, 2000, Sams appeared before Justice Michael J. Obus to enter a plea of guilty. In accordance with the agreement reached with the district attorney's office, Sams pleaded guilty to attempted robbery in the second degree, a Class D violent felony. As Justice Obus explained to Sams, due to a prior conviction for a violent felony, the minimum sentence he was eligible to receive was five years' imprisonment.

Sams was sentenced on July 12, 2000, to a determinate term of five years' imprisonment. Despite New York Penal Law Section 70.45(1), which provides that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," Justice Obus did not impose a term of post-release supervision ("PRS") or otherwise indicate that Sams would be subject to PRS. The written order of commitment also did not mention any PRS term. Justice Obus did note that Sams

2

had waived his appellate rights, and Sams did not file any direct appeal challenging his conviction or sentence.

In March 2004, Sams was granted parole.  Sams's petition states that while Sams was incarcerated he never received a written commitment sheet reflecting a PRS term, that he was released "without any stipulations or conditions of post release supervision," and that he was not informed of "any set of conditions of P.R.S."  The exhibits accompanying respondent's motion indicate, however, that on March 10, 2004, Sams signed a document entitled "Certificate of Release to Parole Supervision," which indicates that he "agreed to abide by" various conditions of release.  The document indicates that Sams was "additionally subject to a period of five years Post-Release Supervision," although the document does not reveal the authority under which that penalty was imposed.  The document further states that Sams "voluntarily accept[ed] Parole Post-Release Supervision," and that he "under[stood] that Parole Post-Release Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon [him] by the Board of Parole or its representatives."

In June and July of 2004, parole warrants were issued alleging various violations of the terms of Sams' PRS.  Sams then absconded from supervision for a period of two years.  He was subsequently apprehended and returned to custody in 2006.

3

By a Parole Revocation Decision Notice issued by the New York State Division of Parole on June 13, 2006, Sams's parole was revoked for failure to report to his parole officer on June 23, 2004; the seven other charged parole violations were withdrawn. The notice indicates that Sams was to be returned to prison for 18 months.

Sams's petition alleges that it was only on June 28, 2006, when the petition reports that Sams was transferred into the custody of the New York State Department of Correctional Services following the revocation of his parole, that he "received confirmation that a five year P.R.S. period had been added to his sentence." The petition further indicates that Sams attempted to have the PRS term administratively removed, but that his application was denied.

Following this denial, on November 10, 2006, Sams, proceeding pro se, filed a motion in New York State Supreme Court pursuant to New York Criminal Procedure Law Section 440.20 ("CPL Section 440.20") requesting that his sentence (but not his underlying conviction) be "set aside" because, inter alia, his lack of awareness of the PRS term rendered his plea involuntary and, more generally, the PRS term could not form a part of his sentence as it was not part of the "sentence or [judgment] entered upon the records of the Court."

4

In an opinion dated February 23, 2007, Justice Obus denied Sams's motion. While acknowledging that "the failure of the court to advise him of the mandatory period of PRS would support a challenge to the voluntariness of his plea," Justice Obus noted that Sams did not seek to vacate his plea, but rather to have the PRS term removed from his sentence. Justice Obus concluded that he was "without power" to grant such relief, as "any such action would render the resulting sentence unlawful," citing, inter alia, New York v. Sparber, 34 A.D.3d 265 (N.Y. App. Div., 1st Dep't 2006), in which the First Department had held that even where "the court's oral sentence was silent as to PRS," a determinate sentence "necessarily include[s]" the appropriate term of PRS under Penal Law Section 70.45(1). Id. at 265. Justice Obus did "direct that the written sentence commitment be amended to reflect the five-year PRS period," but stated that "such an amendment does not operate to change the sentence itself, but is intended to clarify an aspect of the sentence and to comply with the requirement that the sentence be entered upon the records of the court."

Sams's petition states that he attempted to appeal this decision to the First Department, but that leave to appeal was denied. By contrast, respondent reports that, having contacted both the appropriate district attorney's office and the First

5

Department, there is no record of such an appeal having been taken.

Sams's habeas petition was received by the Pro Se Office on April 26, 2007. The petition raises substantially the same claims as were raised in the CPL Section 440.20 motion, with the addition of language challenging the holding and reasoning of Justice Obus's February 23, 2007 decision on that motion.

Respondent states that Sams was released from prison on September 24, 2007, having served his full prison term. Respondent further states, however, that Sams is currently serving a term of supervised release "as a result of the underlying conviction" that will expire on August 31, 2011.

DISCUSSION

Respondent contends that Sams's petition must be dismissed because it is untimely under 28 U.S.C. § 2244(d), and because it presents claims that are unexhausted. While the merits of respondent's timeliness argument are doubtful,[1] that issue need

---

[1] Respondent first argues that Sams was required to file his petition before August 11, 2001 -- one year and thirty days after his original sentencing -- a contention that is absurd on its face, given respondent's concession that Sams was not made aware of the PRS term at the time of his sentencing. Respondent next argues that the petition is untimely under § 2244(d)(1)(D), which permits the filing of a habeas petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Respondent points to the Certificate of Release signed by Sams on March 10, 2004, and argues that this document

6

not be resolved at this stage as Sams's claims are indeed unexhausted.

"Before a state prisoner may obtain a writ of habeas corpus from a federal court, the prisoner must exhaust his remedies in state court." Jimenez v. Walker, 458 F.3d 130, 148 (2d Cir. 2006) (citing 28 U.S.C. § 2254(b)(1)). This rule "bars the federal court from granting relief under § 2254 from a state court conviction until the petitioner has utilized every opportunity offered to him in state procedure to obtain the same relief from the state courts." DiSimone v. Phillips, 518 F.3d 124, 127 (2d Cir. 2008). Here, Sams was entitled to petition the First Department for leave to appeal the denial of his motion pursuant to CPL Section 440.20, see N.Y. Crim. Proc. L. § 450.15. Although the petition states that Sams did so, it contains no documentation of such an appeal, and respondent has represented that the records of the district attorney and First Department do not indicate that such an appeal was taken. Sams

---

must have made Sams "aware that he was subject to a five-year post-release supervision term." While this statement is accurate as far as it goes, it misses the crucial point: there is nothing in the Certificate of Release indicating that the PRS term was imposed as part of his sentence, and not as a condition of his early release and parole. Thus, the current record suggests that Sams did not become aware of the "factual predicate of [his] claim" -- i.e., that a PRS term had been added to his sentence -- until sometime in June 2006. If June 2006 is the starting point for the one-year filing period, this petition was timely filed. As noted above, however, it is not necessary to resolve the timeliness issue here.

not having opposed the respondent's motion, it must therefore be concluded on the current record that Sams did not, in fact, seek leave to appeal Justice Obus's decision of February 23, 2007. When a petitioner has failed to exhaust state court remedies and the state would now find the claims "procedurally barred," those claims are considered procedurally defaulted for the purposes of federal habeas. Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Jimenez, 458 F.3d at 148-49. Where there is such a procedural default, habeas review is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Jimenez, 458 F.3d at 149. Because Sams's time to appeal the February 23, 2007 decision now appears to have passed, see N.Y. Crim. Proc. L. § 460.15; id. § 460.10(4)(a); N.Y. Comp. Codes R. & Regs. tit. 22, § 600.8(d) ("Application for a certificate granting leave to appeal to [the First Department] shall be made, in writing, within 30 days after service of the order upon the applicant . . . ."), his claims are procedurally defaulted.[2]

---

[2]  In Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990) (per curiam), the Court of Appeals held that where a habeas petition under

Given that respondent did not present the issue of procedural default in its motion, however, Sams has not yet had an opportunity to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Accordingly, respondent's motion will be denied without

---

§ 2254 is filed following the denial of a motion under New York Criminal Practice Law Section 440, and no attempt to appeal that denial was made by the petitioner, the claims presented cannot be considered exhausted (and subject to the procedural default doctrine) because a federal court "ha[s] no authority to declare as a matter of state law that an appeal . . . is unavailable." Id. at 54. Although some courts in this Circuit have continued to observe this narrow exception to the procedural default doctrine, see, e.g., Quintana v. McCoy, No. 03 Civ. 5747, 2006 WL 300470, at *5 (S.D.N.Y. Feb. 6, 2006) (citing cases); Bloomer v. Costello, No. 00 Civ. 5691, 2001 WL 62864, at *3-6 (S.D.N.Y. Jan. 24 2001), others have concluded that subsequent guidance from the Court of Appeals, e.g., Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991), Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997), and the Supreme Court, e.g., Coleman, 501 U.S. at 735 n.1, makes clear that, contrary to the holding in Pesina, "if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal" the habeas court can and should consider those claims to be "technically exhausted" but procedurally defaulted. Woodford v. Ngo, 548 U.S. 81, 93 (2006). See also Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (noting that where a procedural default renders "presentation in the state forum . . . futile," the "habeas court theoretically has the power to deem the claim exhausted"). See generally Castillo v. Hodges, No. 01 Civ. 2172, 2004 WL 613075, at *4 (S.D.N.Y. Mar. 29, 2004) (citing cases). Thus, here, because "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," Coleman, 501 U.S. at 735 n.1, those claims will be considered technically exhausted but procedurally defaulted.

prejudice, and an Order issued in conjunction with this Opinion will provide Sams approximately thirty days to address the reason why he failed to appeal the denial of his CPL Section 440.20 motion, or why the failure of this Court to consider his petition would result in a fundamental miscarriage of justice.

The following discussion may assist Sams in making the appropriate showing. It appears unlikely that Sams will be able to demonstrate that failure to consider his petition would result in a fundamental miscarriage of justice. This "narrow" exception to the procedural default doctrine is generally applied only in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494 (1991). See generally Schlup v. Delo, 513 U.S. 298, 320-23 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986).[3] Sams does not claim that he is actually innocent of the crime of conviction.

---

[3] Indeed, the fundamental injustice exception has been so closely tied to claims of actual innocence that this exception is sometimes simply referred to as a requirement that the petitioner demonstrate actual innocence. See, e.g., DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a [petitioner] has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the [petitioner] can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (quoting Bousley v. United States, 523 U.S. 614, 622 (1998))).

10

On the other hand, it appears likely that Sams will be able to demonstrate "actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750. Sams is and has been subjected to a term of PRS that appears, on this record, to have been imposed in violation of clearly established federal law as determined by the United States Supreme Court in Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936). See Earley v. Murray, 451 F.3d 71, 74-77 (2d Cir. 2006) (Earley I), rehearing denied, 462 F.3d 147 (2d Cir. 2006) (Earley II), cert. denied, 127 S. Ct. 3014 (2007). In Earley I, the Court of Appeals addressed the same issued raised here, namely, the subsequent imposition of a PRS term despite the failure of the sentencing court to make any reference to PRS during sentencing. See Earley I, 451 F.3d at 73. Relying on Wampler, the Court of Appeals held that it was clearly established federal law that "[t]he only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." Earley I, 451 F.3d at 75. Earley's sentence had been administratively amended after sentencing by the Department of Corrections to include a PRS term, without the involvement of a judge or notice to Earley. Id. at 73. Here, Sams's sentence likewise appears to have been administratively amended sometime between his sentencing in 2000 and his parole in 2004, although it is not apparent from the

11

record precisely when or how this occurred. It may be noted, however, that prior to Earley I "New York courts regularly fail[ed] to inform defendants of mandatory PRS terms but consider[ed] them part of those defendants' sentence nonetheless." Earley II, 462 F.3d at 150.

The only distinction between Earley's case and this one is that, in connection with the denial of Sams's CPL Section 440.20 motion, Justice Obus directed that the order of commitment -- an administrative document signed by the Clerk of the Court -- "be amended to reflect the five year PRS period." Although it could be argued that this action represents an "alteration to [Sams's] sentence . . . made by a judge in a subsequent proceeding," Earley I, 451 F.3d at 75, thereby satisfying the requirements of Wampler as interpreted by Earley I and Earley II, Justice Obus made explicit that his directive did "not operate to change the sentence itself," but was merely "intended to clarify" that the PRS term was already included in Sams's sentence by the operation of law. Thus, it is doubtful whether this action satisfied the requirements of the Constitution, because, as the Earley I court stated, "an erroneous order of commitment prepared by the clerk of court with the court's knowledge cannot alter the sentence imposed by the court." Id. Rather, "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's

12

liberty." Id. (citing Wampler, 298 U.S. at 464); see also Earley II, 462 F.3d at 149 ("The sentence imposed remains the sentence to be served unless and until it is lawfully modified.") (emphasis added).[4]

Thus, in all likelihood the focus of Sams's submission should be whether he can demonstrate cause for his procedural default. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'" Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (quoting Murray, 477

---

[4] It is also noteworthy that the legal arguments relied upon by Justice Obus in his decision on the CPL Section 440.20 motion were explicitly rejected in Earley I and Earley II. Most notably, in Earley I, the Court of Appeals rejected the state's argument that "a five-year PRS was mandated by statute and therefore necessarily part of Earley's sentence by operation of law," and thus did not need to be announced by the sentencing judge. Earley I, 451 F.3d at 76-77. The Court of Appeals reaffirmed this holding in Earley II, 462 F.3d at 148-49. As the Court of Appeals concluded,

> [i]n sum, [the state's] argument that the PRS term was 'imposed' at sentencing because it was always part of the determinate sentence handed down by the judge is simply incorrect. Whatever conceptualization [the state] has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate to undermine protections contained in the Federal Constitution. And as Wampler requires the custodial terms of sentences to be explicitly imposed by a judge, any practice to the contrary is simply unconstitutional and cannot be upheld.

Id. at 150.

13

U.S. at 488). Simply put, Sams must explain to this Court why he failed to appeal the denial of his CPL Section 440.20 motion.

If Sams fails to make a timely submission, respondent's motion will then be granted and the petition dismissed. If Sams does make such a submission, respondent will be given an opportunity to respond, and this Court will decide whether Sams's claims may be considered and, if so, whether his petition should be granted.

CONCLUSION

Respondent's motion to dismiss, filed on October 18, 2007, is denied without prejudice.

SO ORDERED:

Dated:   New York, New York
         July 28, 2008

                                    _____
                                         DENISE COTE
                                    United States District Judge

COPIES SENT TO:

Edward Sams
1385 Stebbin Avenue, Room 205
Bronx, NY 10459

Ashlyn Hope Dannelly
New York State Office of the Attorney General
120 Broadway
New York, NY 10271